**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| METRO CARDIOVASCULAR CONSULTANTS, LTD., individually and as the representatives of a class of similarly situated persons and entities, | |
| Plaintiff, | Civil Action No. 1:19-cv-06295 |
| v. | |
| FENSTER-MARTENS HOLDING COMPANY, ENTERPRISE MEDICAL RECRUITING and KEN WARSHAW; | |
| Defendants. | **JURY DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

NOW COME the Plaintiff, METRO CARDIOVASCULAR CONSULTANTS, LTD. ("Plaintiff"), by through its attorney, James C. Vlahakis, and brings this putative class action against Defendants ENTERPRISE MEDICAL RECRUITING and KEN WARSHAW:

**I.     <u>Introduction</u>**

1.      The Telephone Consumer Protection Act of 1991, 47 USC §227, et seq. (at times the "TCPA"), as amended by the Junk Fax Prevention Act of 2005, makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §227(b)(1)(C).

2.      "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5).

3.      "The term 'telephone facsimile machine' means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal

and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. §227(a)(3).

## II. Parties, Jurisdiction and Venue

4. Plaintiff is an Illinois corporation, located in Oak Law, Illinois.

5. Plaintiff maintains a telephone number, (708) 229-0300 (the "Facsimile Number"), which it uses to send and receive facsimiles.

6. The Facsimile Number is connected to a device which utilizes hardware and software to allow the device to receive, store and print facsimiles ("Facsimile Machine").

7. The Facsimile Machine is located within this District and Plaintiff uses the Facsimile Number to send and receive facsimiles.

8. Defendant FENSTER-MARTENS HOLDING COMPANY d/b/a Enterprise Medical Recruiting ("EMR") is a Missouri corporation and its charter no. is 00384037.

9. EMR's business address is 714 Spirit 40 Park Drive, Suite 125 Chesterfield, MO 63005.

10. EMR's registered agent is Neal Fenster, at 714 Spirit 40 Park Drive Suite125, Chesterfield, MO 63005.

11. EMR's Neal Fenster ("Fenster") is Defendant's president and secretary.

12. Fenster is a citizen and resident of Missouri.[1]

13. "Enterprise Medical Recruiting" is registered as a fictitious name for Defendant and was formed on February 2, 2016, and its charter no. is X001240373.

---

[1] Plaintiff reserves the right to amend the complaint to assert a claim against Fenster should discovery support a claim.

14.     Defendant Ken Warshaw, on information and belief is a citizen and resident of Missouri.

15.     This Court has personal jurisdiction over Defendants because they each transacted business within this judicial district through their sending of over forty unsolicited advertisements facsimile transmission to telephone facsimile machines located within the State of Illinois, and in particular, this judicial district.

16.     As detailed below, one or more of the Defendants has also committed tortious acts within this judicial district by and through the sending of unsolicited facsimile advertisements to Plaintiff, and upon information and belief, to other similar unsolicited advertising facsimiles to this judicial district.

### III.     Background Allegations

17.     EMR's website states that it has been in operation since 1990 and that it has "placed thousands of physicians and advanced practitioners in top medical positions nationwide."  A true and accurate screen capture of EMR's "Why Us" webpage is depicted below:



18.     EMR's recruiting efforts constitute purposeful business activities within the State of Illinois.

19.     For example, in 2019, EMR promoted that it was assisting "a large system to recruit a Gastroenterologist!" in or around Belleville, Illinois.

20.     A true and accurate copy of the "Gastroenterology opening East of St. Louis" is depicted below:



21.     In 2019, EMR also made the following positions for cities located within the Northern District of Illinois.  A true and accurate copy of EMR's job listings of needed positions are depicted below:



22.     Venue is proper because the subject facsimiles were sent to and received within this judicial district.

23.     Supplemental jurisdiction exists for Plaintiff's state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

### IV.     <u>Summary Of The TCPA</u>

24.     Congress enacted the TCPA to combat unsolicited facsimiles:

> Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes, emphasizing in the same Report that "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications."

*See,* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (the "2003 TCPA Report and Order") at para. 201 (quoting H.R. REP. NO. 102-317 at 25 (1991)).

25.     The 2003 TCPA Report and Order can be found at the following web address:   https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

26.     Unsolicited facsimiles prevent telefax machines from receiving authorized facsimiles, prevent their use for authorized outgoing facsimiles, cause undue wear and tear on the recipients' telefax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited advertising message.

27.     The prohibitions of TCPA is not limited to unsolicited facsimiles that are sent to "conventional stand-alone telephone facsimile machine."

28.     According to the FCC's 2003 TCPA Report and Order:

> We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes . . . .  The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.
>
> The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

*See*, FCC's 2003 TCPA Report and Order at paras. 200, 201.

29.     Pursuant to the TCPA, the person or entity sending an advertising facsimile bears the burden of proof as to whether it had permission of the facsimile recipient to send an unsolicited facsimile advertisement.  47 U.S.C. §227(b)(1)(C)(i).

30.     One way a sending party can demonstrate permission is through demonstrating an established business relationship (an "EBR") with the receiving party.

31.     The burden of proving EBR is on the party that sends a facsimile:

12. To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. We emphasize that we are not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

* * *

14. In the event a recipient complains that its facsimile number was not provided to the sender, the burden rests with the sender to demonstrate that the number was communicated in the context of the EBR.

15. . . . We also reiterate that senders of facsimile advertisements must have an EBR with the recipient in order to send the advertisement to the recipient's facsimile number. The fact that the facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number.

*See,* Report and Order and Third Order on Reconsideration (the "2006 FCC Order"). *See,*

https://apps.fcc.gov/edocs_public/attachmatch/FCC-06-42A1.pdf

32. The TCPA prohibits the sending of unsolicited advertising facsimiles to traditional, stand-alone facsimiles machines, as well as computerized facsimile delivery systems.

33. The TCPA authorizes an aggrieved person to be awarded statutory damages of $500 for each unlawful facsimile. 47 U.S.C. § 227(b).

34. The TCPA allows a court "in its discretion" to increase the award up to a maximum of treble damages where a defendants "willfully or knowingly violated" the statute. 47 U.S.C. § 227(b)(3). "Willfully" and "knowingly" are not defined by any specific section of the TCPA.

35. The Communications Act of 1943, which contains the TCPA, defines acting "willfully" as a voluntary act, but does not require knowledge that the act violates the

statute. The terms "willfully" or "knowingly" simply require that the actions of Defendant(s) to be intentional or volitional, as opposed to accidental or inadvertent. Plaintiff is not required to demonstrate that Defendant(s) must have known that the conduct would violate the statute. *See Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010), [*22] adhered to on reconsideration, No. 09 C 2796, 2010 U.S. Dist. LEXIS 142528, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

36.    The plain language of 47 U.S.C. § 227(b) makes the sender of an unauthorized commercial facsimile strictly liable, so interpreting "willfully" as requiring a volitional act. Plaintiff "need not prove that [D]efendant[s] had knowledge of the TCPA's provisions in order to establish that the [D]efendant[s] willfully or knowingly violated the TCPA." *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046, 2011 WL 1766018, at *2 (N.D. Ga. May 4, 2011) (citing *Charvat v. Ryan*, 116 Ohio St. 3d 394, 2007-Ohio-6833, 879 N.E.2d 765, 770).

### V.    The Subject Facsimile

37.    On March 12, 2019, Defendants sent or caused to be sent an unsolicited facsimile advertisement to Plaintiff's Facsimile Number.

38.    The March 12, 2019, facsimile, hereafter the "Subject Facsimile", depicts material advertising the commercial availability of an "Experienced Noninvasive Cardiologist Looking in Northern Illinois or Southern Wisconsin" and the Subject Facsimile was sent by one or more of the Defendants without Plaintiff's prior express invitation or permission, in writing or otherwise.

39.    The Subject Facsimile states in part: "If you or someone you know is interested in this candidate, please call me. I would be happy to discuss his candidacy

in greater detail. I can be reached at (800) 825-2785" and lists the name of "Ken Warshaw."

40.     The Subject Facsimile also states that Enterprise Medical Recruiting is "[t]he Healthcare Recruiting Experts Since 1990" and lists a website of www.Enterprisemed.com

41.     A copy of the Subject Facsimile is depicted below:



42.     The Subject Facsimile is an unsolicited advertisement as defined by 47 U.S.C. §227(a)(5).

43.     In part, the Subject Facsimile states:   *"We have vetted this particular candidate(s) and verify their candidacy as authentic.   IF you have any questions pertaining to our candidate vetting process please contact Neal Fenster, President/CEO at (800)467-3737 x3005."*

44.     Accordingly, upon information and belief, Defendant Fenster knew of and authorized the sending of the Subject Facsimile.

45.     The Subject Facsimile states in part:   "If you or someone you know is interested in this candidate, please call me. I would be happy to discuss his candidacy in greater detail. I can be reached at (800) 825-2785" and lists the name of "Ken Warshaw."

46.     Accordingly, upon information and belief, Defendant Warshaw knew of, and authorized the sending of the Subject Facsimile.

47.     Alternatively, Defendant Warshaw took direct action which led to the subject facsimiles being sent to Plaintiff by drafting and/or editing the Subject Facsimile.

48.     Plaintiff did not consent to, request or otherwise solicit the Subject Facsimile.

49.     The sending of the Subject Facsimile by one or more of the Defendants violated the TCPA.

50.     The Subject Facsimile is representative of Defendants' unlawful conduct towards other Illinois based recipients of identical or similar *unsolicited* facsimiles.

51.     Accordingly, on behalf of itself and all others similarly situated, Plaintiff brings this civil action to certify a class of persons and entities who were sent facsimile advertisements without their prior express invitation or permission.

## VI.     Violations of the TCPA

52.     The Subject Facsimile, by offering vetted cardiologist candidate, was and is an "unsolicited advertisement" as defined by 47 U.S.C. §227(a)(5) because the Subject Facsimile advertised and promoted the commercial availability of property, goods and/or services.

53.     The Subject Facsimile was transmitted by Defendants without Plaintiff's "prior express invitation or permission, in writing or otherwise."  47 U.S.C. §227(a)(5).

54.     To the best of Plaintiff's knowledge information and belief, Defendants did not have a prior established business relationship with Plaintiff.

55.     As set forth above, one or more of the Defendants sent the Subject Facsimile to the Facsimile Number.

56.     Alternatively, one or more of the Defendants caused the Subject Facsimile to be sent to the Facsimile Number.

57.     Plaintiff's receipt of the Subject Facsimile caused Plaintiff to suffer concrete and actual harm.

58.     Plaintiff, as recipient of the Subject Facsimile, temporarily lost the use of its Facsimile Machine and its paper, ink and toner for a period of time.

59.     Receiving, viewing and printing the Subject Facsimile wasted the Plaintiff's valuable time and the time of one of its employees.

60.     The time wasted to review the Subject Facsimile could have been spent on something else.

61.     The transmission of the Subject Facsimile interrupted and disturbed Plaintiff's right of privacy and right to not be disturbed with unsolicited advertising facsimiles.

62.     When one or more of the Defendants sent or approved the Subject Facsimile to be sent to Plaintiff's Facsimile Number, the sending and receipt of Subject Facsimile tied up Plaintiff's Facsimile Number, caused Plaintiff's to use data, resulted in the unnecessary use of computer storage space and unauthorized usage of the Facsimile Machine's software and hardware.

63.     Contacting the sender of an unsolicited facsimile for the purpose of telling the sending party to stop sending unsolicited facsimiles wastes the time of the recipient.

### COUNT I – Individual Claim for Violations of the TCPA

64.     Plaintiff incorporate the above paragraphs as if fully set forth.

65.     The Subject Facsimile was an unsolicited advertisement as contemplated by the TCPA.

66.     The TCPA provides a private right of action to bring this action on behalf of Plaintiff. 47 U.S.C. §227(b)(3).

67.     As set forth above, one or more of the Defendants violated the TCPA and the regulations promulgated thereunder by sending the Subject Facsimiles to Plaintiff without Plaintiff's permission and without a valid EBR.

68.     The Subject Facsimiles were not sent to Plaintiff by accident.

69.     One or more of the Defendants intentionally violated the TCPA by sending or causing the Subject Facsimiles to be sent to Plaintiff without Plaintiff's permission and without a valid EBR.

WHEREFORE, Plaintiff, in its individual capacity, demands judgment in its favor and against each Defendant as follows:

      a.      award Plaintiff $1,500 for Defendants' "willful or knowing" violations of the TCPA ;

      b.      enjoin Defendants from additional violations of the TCPA; and

      d.      award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

### COUNT II – Class Action for Violations of the TCPA

70. Plaintiff incorporate the above paragraphs as if fully set forth.

71. More than forty (40) Illinois companies or persons in the State of Illinois received the Subject Facsimile or something similar to the Subject Facsimile without their consent and were harmed in a similar manner as alleged above by Plaintiff.

72. Upon information and belief, because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimiles, it is plausible to allege that one or more of the Defendants has or have sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile in violation of the TCPA.

73. In 2019, one or more of the Defendants sent or caused to be sent the Subject Facsimiles to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

74. On information and belief, in 2018, one or more of the Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

75. On information and belief, in 2017, one or more of the Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

76.     On information and belief, in 2016, one or more of the Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

77.     On information and belief, in 2015, one or more of the Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to at least forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

78.     The TCPA provides a private right of action to bring this action on behalf of Plaintiff and the putative class members to redress Defendants' violations of the Act and provides for statutory damages. 47 U.S.C. §227(b)(3).

79.     Plaintiff intends to certify a class which includes the Subject Facsimile and all other similar unsolicited advertising facsimiles sent during the four years prior to the filing of this civil action through the present.

80.     The unlawful sending of the Subject Facsimile and other similar unsolicited facsimiles to Plaintiff and other putative class members caused Plaintiff and the putative class members to suffer damages.

81.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the recipients to use and waste paper and toner when they printed the subject facsimiles.

82.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members occupied and/or depleted their telephone lines, data lines, computer storage related to the operation of their facsimile machines.

83.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members caused Plaintiff and the

class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

84.     This wasted time could have been spent on the Plaintiff's and the other class members' business activities.

85.     Just like with Plaintiff, Defendants cannot demonstrate that it had the consent of the recipients of each facsimile advertisement.

86.     The unlawful sending of the Subject Facsimile to Plaintiff and the unlawful sending of other similar unsolicited facsimiles to class members interrupted the Plaintiff's and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

87.     Common questions of law and fact apply to the claims of all class members. The common material questions of fact and law include, but are not limited to, the following:

      a.  Whether one or more of the Defendant(s) sent unsolicited fax advertisements;

      b.  Whether the facsimiles advertised the commercial availability or quality of property, goods, or services;

      c.  The manner and method Defendant(s) used to compile or obtain the list of fax numbers to which they sent the Subject Facsimiles:

      d.  Whether Defendant(s) faxed advertisements without first obtaining the recipients' prior invitation or permission;

      e.  Whether Defendant(s) sent the faxed advertisements knowingly;

      f.  Whether Defendant(s) violated the provisions of 47 U.S.C. §227 and the regulations promulgated thereunder;

      g.  Whether Defendant(s) should be enjoined from faxing advertisements in the future;

      h.  Whether Plaintiff and the other members of the class are entitled to statutory damages; and

                i. Whether the Court should award treble damages.

88.    Plaintiff's claims are typical of the claims of all class members.

89.    Plaintiff and other members of the class received the same or similar facsimiles as the facsimiles sent by or on behalf of Defendants advertising products, goods and services of Defendants during the Class Period.

90.    Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar facsimiles or facsimiles, which were sent without prior express invitation or permission.

91.    Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute.

92.    Plaintiff will adequately represent and protect the interests of the class and has no interest that conflict with absent class members.

93.    Plaintiff's counsel, James C. Vlahakis, is an experienced consumer class action litigator. For example, Mr. Vlahakis has been appointed to serve as a Steering Committee Member in the case of *In re: Apple Inc. Device Performance Litigation*, 18-MD-02827 (N.D. Cal. May 5, 2018).

94.    Additionally, Mr. Vlahakis has defended and/or prosecuted over two hundred consumer-based civil actions since 1998.

95.    The following is a summary of results obtained by Mr. Vlahakis:

    a.  <u>Class Action Settlements</u>. in conjunction with class counsel, Mr. Vlahakis has received court approval of approximately two dozen FDCPA based class action settlements. Further, in conjunction with class counsel, courts have approved the following multi-million-dollar TCPA based class action settlements. *See, e.g.,In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated

dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapies, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

b. <u>Class Certification Rulings</u>. Defeating a TCPA cell-phone based class certification motion in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013) and decertifying a TCPA based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012);

c. <u>Federal Communication Commission ("FCC") proceedings</u>. Obtaining favorable declaratory relief for a client before the FCC relative to a TCPA junk facsimile-based cause of action (*see* FCC's Order of October 30, 2014, FCC14-164, in CG Docket Nos. 02-278 and 05-338); and

d. <u>Appellate proceedings</u>. On September 5, 2019, the Consumer Finance Protection Bureau filed an amicus brief in support of Mr. Vlahakis' client in an appeal pending before the U.S. Court of Appeals for the *Seventh Circuit, Preston v. Midland Credit Management, Inc.*, 18-3119.

96.     Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendants, and/or (b) as a practical matter, adjudication of the Plaintiff's claims will be dispositive of the interests of class members who are not parties.

97.     Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a. The evidence of the absence of consent relative to putative class members will  result in the fair and efficient adjudication of class members' claims without the need for separate or individualized proceedings;

b. Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from business records and will not require individualized or separate inquiries or proceedings;

c. Defendants has/have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d. The amount likely to be recovered by individual class members does not support individual litigation;

e. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs;

f. This case is inherently manageable as a class action in that one or more of the Defendants:

    (i)    specifically targeted persons (both businesses and individuals) to receive unsolicited facsimile transmissions ;

    (ii)    purchased a list of advertising leads from a third-party;

g. This case is inherently manageable as a class action in that one or more of the Defendants:

    (i)    business records from one or more of the Defendants will readily identify class members and establish liability and damages;

    (ii)    business records from one or more third-parties will readily identify class members and establish liability and damages;

h. Liability and damages can be established for the Plaintiff and the class with the same common proofs because statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

i. A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

j. A class action will contribute to uniformity of decisions concerning the actions taken by Defendants; and

k. the claims of the class are likely to go unaddressed absent class certification.

98.    In accordance with FRCP 23(b)(1), (b)(2) and (b)(3), Plaintiff brings Count

II of this class action pursuant to the TCPA, on behalf of the following class of persons:

All persons in the United States who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, including, but not

> limited to the promotion of vetted physician candidates (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship.

99. Plaintiff intends the above class to include everyone in the United States who received the identical or similar facsimile as the Subject Facsimiles.

100. Plaintiff also intends the above class to include everyone who received similar variations of unsolicited facsimile advertisement.

101. Alternatively, Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons located in the State of Illinois who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, including, but not limited to the promotion of vetted physician candidates (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship.

WHEREFORE, Plaintiff, in its individual capacity, demands judgment in its favor and against each Defendant as follows:

> a. award class members $500 if Defendants sent them junk facsimiles without their consent and/or without an EBR;
>
> b. award class members up to $1,500 for Defendants' "willful or knowing" violations of the TCPA ;
>
> c. enjoin Defendants from additional violations of the TCPA; and
>
> d. award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Count III – Class Action Claim Pursuant to the Illinois Consumer Fraud Act**

102. As alleged above, Defendants are engaged in commerce in the State of Illinois with regard to Plaintiff.

103.    Defendants violated Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, by sending the Subject Facsimile to Plaintiff and other Class Members.

104.    The Facsimiles are "advertisement[s]" as the term is defined by Section 505/1(a) of the ICFA.

105.    Plaintiff is a "person" as this term is defined by Section 505/1(c) of the ICFA.

106.    Defendants treated Plaintiff as a "consumer" as this term is defined by Section 505/1(e) of the ICFA because Defendants sought to solicit payment from Plaintiff for what was being advertised on the Subject Facsimiles.

107.    The Subject Facsimiles are an "advertisement" as this term is defined by Section 505/1(a) of the ICFA.

108.    According to Section 505/1(a) of the ICFA:

> The term "advertisement" includes the attempt by publication, dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement", or "reminder", to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction.

109.    The Subject Facsimiles are form of a "sale" as this term is defined by Section 505/1(d) of the ICFA.

110.    According to Section 505/1(d) of the ICFA, "[t]he term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or on credit."

111.    The Subject Facsimile was a form of "trade" and/or "commerce" as these terms are defined by Section 505/1(f) of the ICFA.

112.    According to Section 505/1(f) of the ICFA:

> The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible

or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

113. The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."

114. In relevant part, Section 505/2 states as follows:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce. . . .

115. As alleged above and detailed below, one or more of the Defendants violated Section 505/10a(a) of the ICFA.

116. Plaintiff did not consent to receiving the Subject Facsimiles.

117. Defendants violated ICFA by transmitting the Subject Facsimiles without Plaintiff's consent.

118. Defendants intentionally sent the Subject Facsimiles, and the sending of the Subject Facsimiles constitutes an unfair or deceptive act or practice "in the course of conduct involving trade or commerce".

119. Plaintiff suffered tangible damages as a result of receiving the Subject Facsimiles in the form of wasted toner and paper, wear and tear of the subject facsimile machine, and time wasted in terms of having to look at, print and dismiss the Subject Facsimile for what it is – unsolicited junk.

120. Sending unsolicited facsimiles offends public policy. Not only is the sending of unsolicited facsimiles unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law. *See* 720 ILCS 5/26-3.

121.    Sending unsolicited facsimiles is oppressive because unsolicited facsimiles impose a lack of meaningful choice and/or an unreasonable burden upon recipients.

122.    A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

123.    Costs that are imposed on an unwilling consumer can constitute a substantial injury.

124.    Because unsolicited facsimiles are generally sent out *en masse*, and because Plaintiff did not consent to receive the Subject Facsimiles, it is plausible to allege that Defendants have sent, and continues to send, dozens, and up to hundreds of similar unsolicited advertisements via facsimile in violation of the TCPA.

125.    On information and belief, more than forty (40) Illinois companies or persons in the State of Illinois received similar unsolicited facsimiles as the Subject Facsimiles without their consent and were harmed in a similar manner as alleged above by Plaintiff.

126.    On information and belief, 2019, Defendants sent or caused to be sent the Subject Facsimiles to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

127.    On information and belief, in 2018, Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

128.    On information and belief, in 2017, Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

129.    On information and belief, in 2016, Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

130.    On information and belief, in 2015, Defendants sent or caused to be sent similar unsolicited and unlawful facsimile advertisements to more than forty (40) facsimile numbers with Illinois area codes without permission or an EBR.

131.    As alleged above, unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time.

132.    On information and belief, one or more of the Defendants have sent at least three dozen similar unsolicited facsimiles to people and/or business entities in Illinois.

133.    Defendants' practice of sending unsolicited facsimiles has violated Illinois public policy, deprived persons and businesses of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate.

134.    Accordingly, the Complaint plausibly suggests that the aggregate harm caused by this practice would constitute substantial harm and thus unfair within the meaning of the ICFA.

WHEREFORE, Plaintiff, in his individual capacity, demands judgment in its favor and against each Defendant, as follows:

a. award Plaintiff and the class members an amount to be determined to reimburse Plaintiff and the class members for the amount of harm caused by Defendants' violations of ICFA;

b. award punitive damages;

c. award statutory attorney's fees and costs pursuant to ILCS 505/10a(c);

d. enjoin Defendant(s) from additional violations of ICFA; and

e. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Plaintiff hereby demands a jury trial.**

9/20/2019                              Respectfully submitted,

Plaintiff METRO CARDIOVASCULAR
CONSULTANTS, LTD., individually, and
as the representatives of a class of
similarly situated persons

/s/ James C. Vlahakis

James C. Vlahakis
Sulaiman Law Group, Ltd
2500 South Highland Avenue #200
Lombard, IL 60148
Phone: (630) 581-5456
jvlahakis@sulaimanlaw.com